Please call the next case. Case number 23-1566 from the Western District of Arkansas, Louis Arnold v. Charles McClinton. Mr. Owens May it please the court, your honors, my name is Jason Owens. I represent now-retired Deputy Charles McClinton of the Columbia County Sheriff's Office. This case is before the court on an appeal of a denial of qualified immunity to Deputy McClinton in the wake of a shooting in November of 2018 in which Deputy McClinton shot and killed a murder suspect named Roderick McDaniel. The facts of the case are largely or entirely undisputed. In fact, there's video of the events. Certainly undisputed is the fact that Mr. McDaniel had an active warrant for murder from only the day before that he had left the scene of that murder with a murder weapon, that Deputy McClinton knew all these things because he had been at the murder scene and had been told the story by the eyewitness to the murder. That on the evening of the 20th of November of 2018, he found a vehicle matching the description of the murderer's vehicle in an apartment parking lot, pulled his truck in behind the and went to the driver's side window, knocked on the window. Mr. McDaniel rolled the window down just a few inches. When he asked him his name, he said his name, Roderick McDaniel. The deputy wrote the name on his hand, backed up and spoke into his radio. And as he did and dispatch confirmed that it was, quote, him, that's what you hear on the video, McDaniel rolled his window back up quickly, slammed the car in reverse, hitting rather firmly hitting the pickup truck. How much damage was done to the car? Is that in the record? Well, it's not in the record other than what can be seen on the video. At the time, of course, the officer didn't know whether his vehicle was disabled because he... He answered the question. He slammed... You know what's remarkable about this case to me is we have a district court and two parties that have briefed and discussed this case as though the 8th Circuit has never had occasion to apply Tennessee v. Garner. Not one 8th Circuit case cited by the district court other than for general principles, not one cited by you. And the opposing side, party side, cites Thompson v. Murray. So my first question is distinguish that. Well, so I believe we did, if I may be so bold, Your Honor, I believe we did cite Cole v. Bone, one of this court's opinions from the early 90s, that I believe applied... In fact, I'm positive it applied, Tennessee v. Garner. That was a pursuit case. And contrary to the appellee's contentions, that risk must be temporally immediate or imminent. I don't see any such... Not in your main brief. I apologize if... I don't see any... I thought that was in our reply brief. I'll send a 28-J letter, Your Honor. No, tell me what you think is the best 8th Circuit Tennessee v. Garner case. Well, I... If you don't cite any, do you have any that... I think Cole v. Bone is very instructive. That's a pursuit case where a tractor-trailer was pursued by the police. Well, don't tell us. You can send us a 28-J. Indicate a city... Distinguish Thompson v. Murray. I think the important thing in Cole v. Bone is that the officers actually waited until the road was clear in the pursuit before shooting the driver of the vehicle in the forehead. In other words, directly opposite to this idea that risk must be temporarily imminent or immediate, they actually waited until the coast was clear, which is, of course, what you would do in a pursuit. You don't want to shoot the person when there's 10 cars around them. They waited until the coast was clear when there was no imminent or immediate threat to shoot. Vague recollection. It's been a case since a recent case. Well, so... Was it before the conducted issue here? Yes, Cole v. Bone was well before. The distinction for the Thompson case and every case cited by the plaintiff is principally the fact that this suspect had an active murder warrant. This is critically important in Tennessee v. Garner, where the court said, quote, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm. Indisputably true. Then deadly force may be used to if necessary to prevent escape and if where feasible some warning is given. The video clearly demonstrates that flee only principle you just cited. I don't know of one. We certainly have the danger. Well, certainly. In fact, that's in multiple. In the state of Morgan. No doubt. This court has held over and over again that an officer can defend himself with deadly force where he or an identifiable other is in danger. What Tennessee v. Garner allows is another option. But tell me the facts here. Who was in danger and how and why and when? So it's the same people that were in danger in Brousseau v. Hagen, Scott v. Harris, Cole v. Bone and a host of other cases where absent the use of deadly force, a pursuit would have begun. No doubt about it here. Wasn't the car facing like a grassy area with the buildings? So it seems different than a sort of full blown pursuit on a highway or on the streets where anything can happen. I agree. It's probably more dangerous because this is this is an area where pedestrians are walking freely. But is that is this I thought it was one in the morning. No, it was. It was it was certainly dark. It was at night. I thought it was a man. It was certainly dark at the time. It was the next day, the next morning after the murder. It was the next day. Yes, your honor. That's correct. I thought it was. I thought it was in the evening or the next day after after dark. I didn't know there was anything in the record about people being around other than the two involved. Certainly this was an apartment complex. The lot was full. People were were moving about. Now, was there any testimony that there were people moving about? Well, certainly you can see some of that on the video. You can see you can see cars moving and people moving as he pulls up and as the conduct begins. Now, obviously, I think people tend to back away from those situations. Well, it isn't. Didn't the district court find that there was a fact dispute even looking at looking at the video as to whether or not he was moving forward before he was shot? So the district court did find that and said that there was a fact dispute about whether the car I took it as whether the car was in reverse or in drive. Obviously, if if if the car is stationary, but it's just been moving and there's every indication it will move some more. What what what is the we have this what what the plaintiff's case is, but what's it evidentiary? What's it based on? Anything but the video? The the who testified who will testify for the plaintiff that the car was moving forward? Well, the video testifies for that. So the car does move forward. It didn't move forward by accident. He put it in the drive at some point, presumably before he was shot because the shot killed him almost instantly. The and it's irrelevant. And the reason I say that is Plumhoff in a nine zero unanimous decision awarded qualified immunity to officers who shot three times into a vehicle that was in reverse. That's what happened in Plumhoff. And then when they took off and got past the officers, in other words, the officers weren't in imminent danger. They were in court, granted qualified immunity, nine to nothing. That's on all fours with this case. It's actually illegal. That came from the 8th Circuit? It did. It happened in Memphis. My law partner, in fact, argued that case. Were we affirmed or reversed? Reversed. Reversed on on. Yes, reversed. That's correct. So the question here that the district court didn't analyze at all was the question of whether there's probable cause to believe he's committed a crime. That's indisputable. There was an active warrant. No one disagrees with that active warrant for murder, along with another felony offense, if I recall correctly. Deadly force may be used if necessary to prevent escape. And if we're feasible, some warning has been given. Clearly, warning was given. The only practical warning, which was draw your gun and yell stop multiple times. Was it necessary to prevent escape? Absolutely. Now, tell me your best case on Officer McClintock was was in danger. So I think it's I think it's those same cases. I think it's Brousseau. I think it's Scott versus Harris. I think it's Plumhoff. The gun is not being brandished and it's not in sight. Right. No, that's right. But they find it in the car after he's dead. Sure. But but Plumhoff, Brousseau, the suspect wasn't even armed, didn't have a weapon on his person. Those cases were merely vehicular flight cases. And in both cases. But I think the vehicle was a danger. I think a vehicle is always a danger. Where it could have been backed into the officer. Certainly. And the idea that because a suspect might not run the officer directly down with the grill of the vehicle, belies the notion that cars have steering wheels. One quick turn, the officer is run over. When do you suppose McDaniel's flight began? This incident? Certainly when he put it in reverse. How about when he left the murder site? Well, I think that's true as well. He was it was. Did you argue that he was a fugitive from justice? There's no doubt. Well, but it's almost almost a, you know, it's eight, it's six or eight hours later and he's idling a car in a very strange place. He's still in flight. No doubt. No doubt he wasn't. And so was that argued to the district court? Well, I certainly think we focused on the the vehicular flight once. Is it relevant? I think it is. Certainly he's he's absconding from justice. He knew he was wanted. Well, now now where are you? Are you taking on the mere flight? I don't I don't know that we've ever had a a mere flight is enough decision. Well, Garner Garner clearly holds that clearly says that deadly force may be used to prevent escape. You're the only one that calls it clearly in this case. Well, the district court doesn't and your opposing counsel doesn't. So where do you get clearly? Well, the district court didn't say that. The district court didn't analyze that prong at all. The district court didn't didn't even address the argument that deadly force can be used to prevent escape of a dangerous fleeing felon like this. Say in defense of the Eighth Circuit, Memphis is in Tennessee, which is in the Sixth Circuit. And that was the court from which that's correct. That is correct. Your honor. It was the Sixth Circuit. Thank you for your time for rebuttal. Thank you. Mr. Price. May it please the court. I am Troy Price with me today as Alexander Jones was on the brief. Rather than seizing on one passage of Tennessee versus Garner, that was not applicable to the scenario then before the court, I respectfully suggest that the court adhere to the Supreme Court's admonition to slosh its way through the fact-bound morass related to the totality of the circumstances. And the facts here are clear. There is a video that creates a genuine issue of material fact. Which is? Which is whether there was a immediate threat to Officer McClinton. There are McClinton's own words. Well, if you're talking immediate as instantaneous, that doesn't comply with case law. I mean, I can I can posit all sorts of you can leaving aside the word immediate. There are all sorts of threats and risks involved in this situation right then. He could have rolled the window down again, pulled out the gun that it hit. There was every reason to suspect he had and shot McClintock. He could have moved the car around where McClintock was standing and run him down. Or he could have taken off and endangered who knows how many people. Well, and the cases that we cited, Capps, Thompson versus Murray, all deal with. I'm more worried about the cases that weren't cited, like a state of Morgan. I am not familiar with that case, Your Honor. He cited it. Or somebody, somebody, maybe the district court did. It's the case, I think, as I recall, it's the case where a guy who'd been threatening or beating up his his girlfriend or significant other came off, came down off the porch with a knife. And was shot to death by the officer who was approaching the porch. Well, and we upheld, we upheld the the we applied Tennessee versus Garner and qualified immunity. Well, in Capps, we have a knife wielding person purportedly approaching an officer. And the analysis was that's a fact question as to the totality of the circumstances, whether he was indeed subject to an immediate threat. Not when you get to clearly established. I believe, Your Honor, that. I don't, I can't, I don't know what, what's your best clearly established case? The district court did a, a nothing on, on clearly established. What's, how, how would you analyze it? Your Honor, I believe that ever since Tennessee versus Garner, which mentioned it in passing, and Graham versus Connor, the courts have all required an immediate threat. And Capps versus Garner is a branching of a gun case. And the analysis was, was the gun pointing at the, the defendant? What's the case now? That's Cole versus Hutchins, 959 F3rd 1157. I will send the court a 28-J letter. But, and it analyzed the law as it stood in 2016 and said, you have to analyze the immediacy of the threat and whether the threat has come to an end and whether it, it's, the, the danger is imminent. I, I think in each of the cases that the defendant cites in Vasseau, the defendant testified that the Jeep was, had been blocked into a driveway and the officer was concerned that the occupied cars that blocked the Jeep in, there was a danger presented by the occupied cars that blocked the Jeep in. In Scott, there was a pit maneuver performed, but the court noticed, noted that there was danger from the speeding car to pedestrians and traffic. In Morallex, the court was very careful to point out that the vehicle in which someone had threatened to shoot police was fast approaching an underpass where a policeman was waiting for it. In Plenhoff, there had been a dangerous pursuit and the court was careful to point out that it appeared that the subject was prepared to continue his dangerous course of action. Well, let's, assuming you're right that the other cases are different factually, you still have to show, I believe, as the plaintiff that the law is clearly established that this scenario involves an unreasonable use of force. And you say, well, we shouldn't focus on this one passage of Garner, but it does say that if there's probable cause to believe that he's committed a crime involving the infliction of serious physical harm, deadly force may be used if necessary to prevent escape. Do you have a case that says to the contrary to that, that would clearly establish that Garner is wrong or superseded in that respect? No, it's just that the facts presented in Garner were of a night burglary suspect who was not. Well, of course, that's why. There was no probable cause, so. But they're giving guidance as to when force is permissible, it's dicta. And the question is, though, for you, whether you've got a case clearly establishing that that dicta is wrong or superseded or not reasonable for an officer to follow. That's my question for you. I understand, Your Honor. And I can only respond that what the Supreme Court says is that Garner is not an on-off switch and that you have to work your way through the morass of fact-bound considerations. And there are a number of cases that have applied the totality of the circumstances test and with emphasis on immediate threat or imminent threat. And I think we've cited those. Now, I think I have pointed out in the Supreme Court cases where they look to the immediate threat. But no, I do not have a case that says, in the case of physical violence, it's impermissible. No, Your Honor. In your view, what are the facts that remain in dispute, the district court, that are material to the case? So the district court focused, as I understood it, on whether or not he was still backing up or was going forward from viewing the video. Are there other facts that you believe are in dispute, that remain in dispute, that are relevant to the ultimate disposition? Well, Your Honor, with respect to the arguments that have been made in the briefs, I would point out that there was no evidence that there was a drawing of the gun that was apparent to Officer McClinton. In fact, in his affidavit at paragraph five, he said, the windows were tinted and I couldn't see. And in the brief below, the argument was the window was not raised enough. I couldn't see whether there was a gun. I couldn't see the waistband. So I think that there is arguably a disputed fact as to that. But I think that the district court just said it was unclear. The parties disputed whether he was still in reverse or going forward. And I think that that's a genuine fact that is an issue that is material to whether or not there is an immediate threat. So in your view, if a jury were to conclude, no, he was going back, the car, his vehicle was still in reverse going back when he was shot, that that would mean, or at least that would form the basis for a reasonable conclusion that he wasn't an immediate threat? Is that your position? That's part of it, Judge Kelly. But there's also the fact that a jury could conclude from the video that Officer McClinton was standing safely to the side of the vehicle when he fired the shot. What about the facts in the record to some of Judge Loken's questions earlier about who was out and about? Sort of there's the immediate threat to either the officer or to others that I think some of the pursuit cases sort of lend themselves to. What else is in the record and what is disputed about that aspect of it, whether it's the time of day or who's out and about? I understand we have a video, but is there anything else? I believe all that we have is a video. I understand that the defendant's argument is that it's an apartment complex and there may be people around, but there is a reasonable interpretation that the jury could make from the video that there are no bystanders present. There certainly don't appear to be. No. What was the time of day of the shooting? It was late in the evening. I don't recall the exact time. Not the murder, this shooting. It was at night. I don't recall the time, Your Honor. I apologize. But it must have been after midnight because it's... Well, Judge Hickey says approximately 1 a.m. That's what I thought. Even with respect to Stacey v. Garner, where it says, where if feasible, a warning is given. Stop has never been held to be a warning, which we understand from blacks would be to point out a danger. There are cases where the officer says, get on the ground, drop the gun. None of those have been analyzed in the context of a command is the same thing as a warning. So even if we take Garner at its word, there was no warning in this case, just a command to stop. Not stop and I'll shoot, or I'll shoot, not I'm going to shoot. Anything that would be a precursor to I'm telling you that danger is involved. So even if we apply Garner as it's written, as perhaps the court is concerned that it must do, that it was feasible to give a warning, or at least there's a fact issue, and certainly stop is not a warning. What about my suggestion the flight could be viewed as starting with the murder of the previous evening? It seems to me logical, but I'm not sure what, if it were taken into account, what, what does it have any significance? I, I believe, Your Honor, that all the cases analyzed the flight in terms of the encounter between either the officer or pedestrians who were at risk. So I don't think there's anything in the record about. Well, but, but the encounter was the officer coming upon someone who was fleeing, likely to be fleeing from a murder with a murder warrant out. That's true, Your Honor. And he approaches them to investigate. Let's. That's true, Your Honor. So this is, this is not, this is not a cold call, so to speak. That is true, Your Honor. That is true. I just have a few moments left, but I would like to emphasize that in all of the Supreme Court cases that the defendant has cited, there is a pretty close analysis of what the officer said was the threat that led to the shooting, particularly in Brousseau, where all the accused was accused of doing was stealing some tools or something. But there was close analysis of the officer said he was blocked in by an occupied car where his girlfriend and her child were. There was also a car that was occupied by persons who had been fighting with him. And the officer said, I feared for their safety as well as the safety of other officers around. But in none of the cases is there just a glossing over of what has been required time and time again. And what Garner refers to and O'Connor refers to is a requirement of an immediate threat. And I think that's important to consider because if you remove the requirement of an immediate threat, then you just have a case where perhaps you might shoot someone who might be a danger somewhere, sometime, someday to someone. And that's not something that... The trouble is the word immediate is ambiguous to say the least in this context. We've had shooting on hilltop cases and we saw him aiming at our colleagues on the hill. Right. So we shot him. Was that immediate? Well, then it turns out it was a toy gun or something. I understand, Your Honor. And immediate is... Well, the question is, is immediate in the eyes of the beholder or not? I think with objective reasonableness being the standard, it is. Up to a point. I believe you. I don't disagree with that, Your Honor. Unless there are more questions, my time is up. Thank you for your consideration. Begin by speaking briefly to this argument about immediacy. First of all, the word immediate does not modify risk to others in the Tennessee versus Garner opinion. It only modifies the risk to the officer. In other words, the officer can't respond in self-defense to an attenuated risk, but to a more attenuated risk to others, he can respond. So you're saying that the risk is just inherent, the immediate risk is just inherent in the flight? So you've kind of collapsed those two? That's what the Supreme Court has held in Plumhoff and Scott versus Harris and Brousseau versus Hagan. But as we've discussed earlier, you don't have any Eighth Circuit cases where we have collapsed it that way. Correct? Cole versus Bowe would be probably the best one. But every pursuit case speaks to the danger of unidentified motorists up the road. And of course, that's a real danger. And so here, I guess the argument is that we stop the pursuit too early before multiple people were put in danger. I don't see where Garner prohibits that, and certainly as a matter of policy, I think that's a good thing to do. What if Mr. McDaniel had just been charged with, or I'm sorry, was suspected of a less violent crime? And the same situation that we see on the video occurred? Crime involving the infliction of threatened, or threatened infliction of serious physical harm. And so if it were aggravated assault, for instance, I think it would be much the same analysis. What I'm trying to get at is sort of you're describing the flight and the danger that is associated with a pursuit that you've, as you've described it, doesn't matter who's behind the wheel. But whether or not, whatever the person may be suspected of doing the day before, the way you've presented it here, that in and of itself is dangerous. Certainly, the Supreme Court has granted qualified immunity in cases where the offense that had been committed by the driver was much less than here. In Plum Hall, for instance, a headlight was out. That was the offense. And they chased him and shot him 15 times. And the Supreme Court, now, granted qualified immunity. Well, I guess I was trying to get at your collapsing of the two issues, but your time has expired. Thank you, Your Honor. Thank you, counsel. Case has been well briefed and argued, and we will take it under submission.